UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SHANNON SPENCER,

                  Plaintiff,

     v.

ARAMSCO INC.,

                  Defendant.

CASE NO. 2:25-cv-01672-LK

ORDER GRANTING MOTION TO REMAND

This matter comes before the Court on Plaintiff Shannon Spencer's Motion to Remand. Dkt. No. 16. For the reasons provided below, the Court grants the motion.

## I. BACKGROUND

Spencer brought this suit in King County Superior Court as a putative class action, seeking damages under Washington's Equal Pay and Opportunities Act ("EPOA"), Wash. Rev. Code § 49.58.110. Dkt. No. 1-2 at 8–9. The EPOA requires employers "to disclose salary, wage, and benefits information in all job postings." *Branson v. Wash. Fine Wine & Spirits, LLC*, 574 P.3d 1031, 1035 (Wash. 2025) (en banc); *see also* Wash. Rev. Code § 49.58.110(1). Job applicants may bring a civil action against an employer for actual damages or statutory damages for violations of

ORDER GRANTING MOTION TO REMAND - 1

the EPOA's disclosure requirements. *Branson*, 574 P.3d at 1035; Wash. Rev. Code § 49.58.110(5). "'[J]ob applicant' means a person who applies to a job posting, regardless of their subjective intent in doing so." *Branson*, 574 P.3d at 1036.

In November 2023, Spencer applied for an unidentified position with Aramsco, Inc. dba Alpine Products and Interlink Supply ("Aramsco"), a "foreign profit corporation" transacting business in Washington. Dkt. No. 1-2 at 4–5.[1] Spencer's complaint states that a copy of the job posting he applied to is attached to the complaint, Dkt. No. 1-2 at 5, but it is not. *See also* Dkt. No. 5 at 7–16 (verification of state court records also lacking the job posting). According to Spencer:

- "The posting for the job opening [he] applied to did not disclose the wage scale or salary range to be offered to the hired applicant." Dkt. No. 1-2 at 5.

- He "lost valuable time applying to a position for which the posting did not disclose" the required information. *Id.* at 6.

- He "remains unable to evaluate the pay and benefits for the position and compare it to other available positions in the marketplace." *Id.*

- His "ability to negotiate pay remains adversely affected." *Id.*

- He "has experienced economic and non-economic harm as a direct result of Defendant's discriminatory hiring practices [and] its violation of RCW 49.58.110[.]" *Id.*

Spencer further asserts that Aramsco "engaged in a common course of conduct of failing to disclose" wage or salary information in its Washington job postings, and he seeks to certify a class of others who applied for jobs with Aramsco in Washington and were not provided with such information. *Id.* at 6, 8–9.

---

[1] Although the complaint states that Spencer "applied for a job opening in Washington with Defendant[,]" *id.* at 5, the complaint contains one paragraph about Colorado enacting a pay transparency law that is "similar" to Washington's, *id.* at 3. The complaint never explains the relevance of that paragraph to the sole cause of action—violation of Section 49.58.110 of the Revised Code of Washington. In its answer, Aramsco disclaimed "sufficient knowledge or information to admit or deny the allegations in Paragraph 24 of the Complaint[,]" which contained the allegation that Spencer applied for a position in Washington with Aramsco. Dkt. No. 14 at 3.

ORDER GRANTING MOTION TO REMAND - 2

Aramsco filed a notice of removal to this Court. Dkt. No. 1. Spencer then filed his motion to remand. Dkt. No. 16.

## II.    DISCUSSION

Spencer argues that where, as here, a plaintiff "sues under RCW 49.58.110 but does not plead that he or she is a 'bona fide' applicant, engaged in pay negotiations, or was offered an interview, the plaintiff lacks Article III standing and remand is required." Dkt. No. 16 at 1. He argues in the alternative that the case should be remanded because Aramsco cannot establish the amount in controversy required under 28 U.S.C. § 1332(a). *Id.* at 2.

Aramsco responds that Spencer is "relying upon outdated case law decided *before* the Washington State Supreme Court's recent September 4, 2025 clarification of what constitutes a 'job applicant' for purposes of [an EPOA] claim, and conclusory assertions about the $75,000 amount-in-controversy requirement for diversity jurisdiction." Dkt. No. 18 at 6.

## A.    Legal Standards

Removal of a civil action to federal district court is proper when the federal court would have original jurisdiction over the state court action. 28 U.S.C. § 1441(a). As the party invoking federal jurisdiction, Aramsco bears the burden of establishing the existence of a case or controversy under Article III. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *see also Tailford v. Experian Info. Sols., Inc.*, 26 F.4th 1092, 1099 (9th Cir. 2022). "To establish Article III standing, an injury must be 'concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling.'" *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (quoting *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010)). "Article III standing requires a concrete injury even in the context of a statutory violation." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016). For an injury in fact to exist, a statutory violation must have "caused [a plaintiff] to suffer some harm that 'actually exist[s]' in the world; there must be

ORDER GRANTING MOTION TO REMAND - 3

an injury that is 'real' and not 'abstract' or merely 'procedural.'" *Robins v. Spokeo, Inc.*, 867 F.3d 1108, 1112 (9th Cir. 2017) (quoting *Spokeo v. Robins*, 578 U.S. at 338). "[A] plaintiff does not automatically satisfy the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id.* (citation modified).

The amount in controversy is an "estimate of the entire potential amount at stake in the litigation[.]" *Jauregui v. Roadrunner Transp. Servs., Inc.*, 28 F.4th 989, 994 (9th Cir. 2022) (emphasis omitted); *see also Greene v. Harley-Davidson, Inc.*, 965 F.3d 767, 772 (9th Cir. 2020) ("'Amount at stake' does not mean likely or probable liability; rather, it refers to possible liability."). This includes "any result of the litigation, excluding interests and costs, that entails a payment by the defendant." *Gonzales v. CarMax Auto Superstores, LLC*, 840 F.3d 644, 648 (9th Cir. 2016) (citation modified). It encompasses, among other things, "damages (compensatory, punitive, or otherwise) . . . as well as attorneys' fees awarded under fee shifting statutes." *Id.* at 648–49.

To determine whether the jurisdictional amount in controversy has been satisfied, courts may consider "facts presented in the removal petition as well as any summary-judgment-type evidence relevant to the amount in controversy at the time of removal." *Matheson*, 319 F.3d at 1090 (citation modified). A defendant who removes a case thus "may point to many different types of evidence" to establish the amount in controversy. *Flores v. Safeway, Inc.*, No. C19-0825-JCC, 2019 WL 4849488, at *3 (W.D. Wash. Oct. 1, 2019).

## B.    Spencer Lacks Article III Standing

"To determine whether the violation of a statute constitutes a concrete harm, [courts] engage in a two-part inquiry." *Magadia v. Wal-Mart Assocs., Inc.*, 999 F.3d 668, 679 (9th Cir. 2021), *abrogated on other grounds by TransUnion LLC v. Ramirez*, 594 U.S. 413, 442 (2021). Courts "first consider whether the statutory provisions at issue were established to protect concrete

ORDER GRANTING MOTION TO REMAND - 4

interests (as opposed to purely procedural rights)," then assess "whether the specific procedural violations alleged in this case actually harm, or present a material risk of harm to, such interests." *Id.* (citation modified). None of Spencer's allegations constitute an Article III injury because "the specific procedural violations alleged" do not "actually harm, or present a material risk of harm to," any concrete interest. *Id.* That is because Spencer's allegations regarding the harm caused by Aramsco's disclosure violations either merely parrot the language of the statute without support, or are purely speculative. There is no indication that he possessed the skills or experience necessary for the position, nor is there any indication that he had any intention of actually taking the job or negotiating the salary. *See generally* Dkt. No. 1-2. And Spencer's allegations that he "experienced economic and non-economic harm" and that his "ability to negotiate pay remains adversely affected," *see id.* at 6, assume without support that he would have been selected for an interview and ultimately hired for this or equivalent jobs. More is required to show injury in fact: as the Supreme Court has "repeatedly reiterated," threatened injury "must be *certainly impending* to constitute injury in fact, and . . . allegations of *possible* future injury are not sufficient." *Clapper*, 568 U.S. at 409 (citation modified).

Aramsco argues that the motion to remand improperly relies on pre-*Branson* case law, Dkt. No. 18 at 8–9, even though in *Branson*, the Washington Supreme Court held that plaintiffs are "not required to prove they are a 'bona fide' or 'good faith' applicant to obtain remedies under [the EPOA]." 574 P.3d at 1033. *Branson* does not help Spencer establish Article III standing because it has no impact on what it takes to establish such standing, as this Court has held repeatedly post-*Branson*. *See, e.g., Kent v. Tech Mahindra (Americas) Inc.*, No. C24-1168BJR, 2025 WL 2810715, at *4, (W.D. Wash. Oct. 3, 2025) (affirming, post-*Branson*, that an EPOA plaintiff must show an injury-in-fact to establish federal standing regardless of the requirements to state a claim under state law); *Spencer v. Walmart Inc.*, No. 23-cv-1793-BJR, 2025 WL 2910569, at *4–5 (W.D.

ORDER GRANTING MOTION TO REMAND - 5

Wash. Oct. 14, 2025) (granting a motion to remand an EPOA matter for lack of Article III standing post-*Branson* where the defendant could not establish that plaintiff had suffered an injury-in-fact; *Eggleston v. Bruckner Truck Sales Inc.*, No. C25-1467JLR, 2025 WL 3153503, at *3 (W.D. Wash. Nov. 12, 2025) (same).

Aramsco argues that the Court should decline to follow this district's orders remanding cases post-*Branson* because they are not binding or persuasive. Dkt. No. 18 at 9–10. It emphasizes *Branson's* observation that "if a plaintiff meets the definition of job applicant, the plaintiff likely is within the protected zone of interest" for purposes of standing. *Id.* at 10 (quoting *Branson*, 574 P.3d at 1039 n.7). Aramsco urges that "[i]t would seem to logically follow" that a "job applicant" also has Article III standing. *Id.* at 11. But this argument draws a false equivalency between state and federal standing.[2] "[A] plaintiff whose cause of action is perfectly viable in state court under state law may nonetheless be foreclosed from litigating the same cause of action in federal court, if he cannot demonstrate the requisite injury." *Lee v. Am. Nat'l Ins. Co.*, 260 F.3d 997, 1001–02 (9th Cir. 2001). Thus, a "procedural violation of an informational entitlement does not by itself suffice to keep a claim in federal court"; the plaintiff must also allege "at least that the information had some relevance to *h[im]*," and Spencer has not done so here in a non-conclusory, non-speculative manner. *Magadia*, 999 F.3d at 679–80 (quoting *Brintley v. Aeroquip Credit Union*, 936 F.3d 489, 493 (6th Cir. 2019)); *see also id.* at 679 ("[N]ot every minor inaccuracy reported in violation of a statute will cause real harm or present any material risk of real harm." (citation modified)). Consequently, Aramsco has not shown that Spencer has Article III standing.[3]

---

[2] Aramsco's notice of removal notes that statutory standing and Article III standing are not the same, and does not concede the existence of either one. Dkt. No. 1 at 6 n.1 ("Defendant does not concede that Plaintiff or any other purported class member are a bona fide applicant with a recoverable injury (statutory standing) or Article III standing to assert any claims.").

[3] As for Aramsco's arguments regarding futility, Dkt. No. 18 at 11 n.2, "the literal words of § 1447(c)" give "no discretion to dismiss rather than remand an action" over which a district court lacks original jurisdiction. *Int'l Primate Prot. League v. Administrators of Tulane Educ. Fund*, 500 U.S. 72, 89 (1991) (quoting *Maine Ass'n of Interdependent*

ORDER GRANTING MOTION TO REMAND - 6

## C.    Aramsco has Failed to Establish the Amount in Controversy

In moving to remand, Spencer argues that Aramsco has failed to show that the amount in controversy exceeds the $75,000 required to establish traditional diversity jurisdiction. Dkt. No. 16 at 10; *see also* 28 U.S.C. § 1332(a). Aramsco responds that the amount in controversy is met through Spencer's emotional distress damages, his statutory damages, its anticipated cost of complying with an injunction, and Spencer's anticipated class representative fee and attorney's fees. Dkt. No. 18 at 11–20.

With respect to damages, Aramsco contends that Spencer "does not refute (or even address) [its] estimation that up to $200,000 in garden variety damages could be awarded." *Id.* at 12. However, Spencer's motion noted that he "only seeks $5,000 in damages for himself," and that attorney's fees would not reach the remaining $70,000 to meet the amount in controversy requirement. Dkt. No. 16 at 10. Regardless, "[d]efects in subject matter jurisdiction cannot be . . . waived[,]" *LeFaive v. Stadfast Ins. Co.*, C18-1103-RAJ, 2018 WL 6716150, at *2 (W.D. Wash. Dec. 21, 2018), and federal courts "have an independent obligation to determine whether subject-matter jurisdiction exists," *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006). Moreover, as Spencer notes in his reply brief, Dkt. No. 21 at 9, Aramsco has not identified any authority that permits applicants to recover garden variety emotional distress damages for an EPOA claim. The

---

*Neighborhoods v. Comm'r, Maine Dep't of Hum. Servs.*, 876 F.2d 1051, 1054 (1st Cir. 1989)). As the Ninth Circuit has observed, "whether the futility exception remains good law is an open question given *International Primate*[.]" *Sauk-Suiattle Indian Tribe v. City of Seattle*, 56 F.4th 1179, 1189 (9th Cir. 2022). It also runs counter to the long-established principle that "[w]ithout jurisdiction the court cannot proceed at all in any cause" for a court without jurisdiction to effectively decide the merits of a case. *Ex parte McCardle,* 74 U.S. (7 Wall.) 506, 514 (1868). Regardless, the futility exception is "narrow" and applies only where there is "absolute certainty" that a state court would dismiss the action following remand. *Sauk-Suiattle Indian Tribe*, 56 F.4th at 1189–90. Aramsco has not made that showing here. Whether Spencer has standing under state law is a matter for the state court to decide; dismissal for lack of standing under state law is not "foreordained" based on his allegations. *Polo v. Innoventions Int'l, LLC*, 833 F.3d 1193, 1198 (9th Cir. 2016); *see also Hill v. Hydromax USA LLC*, No. 2:25-CV-1621-JNW, 2025 WL 3677481, at *4 (W.D. Wash. Dec. 18, 2025) (declining to dismiss an EPOA case under the futility doctrine because "Washington courts are not bound by Article III, and under *Branson*, Hill need not prove bona fide applicant status to seek remedies under the EPOA" (citation omitted)).

ORDER GRANTING MOTION TO REMAND - 7

cases that Aramsco cites, Dkt. No. 18 at 13, pertain to emotional distress damages awarded under the Washington Law Against Discrimination and therefore fail to provide colorable evidence about the amount in controversy in this case.

Aramsco also notes that Spencer seeks $5,000 in statutory damages, and the cost of complying with an injunction is approximately $7,000. Dkt. No. 18 at 13–14 (citing Dkt. No. 19 at 2–3). It contends that Spencer could seek a class representative fee, Spencer's counsel has sought such awards for plaintiffs in other cases ranging from $10,000 to $20,000, and Spencer received an award of $17,500 in another case. *Id.* at 15 (citing Dkt. No. 20 at 5). Spencer responds that "even if the Court agreed with Defendants[] that its 'evidence' is sufficient to render Mr. Spencer's unpled service award concrete enough for consideration, the amount in controversy is still well below $75,000." Dkt. No. 21 at 9. Even assuming $5,000 in statutory damages, a $17,500 service fee, and a $7,000 valuation of injunctive relief as Aramsco contends, there remains a $45,500 shortfall.

Aramsco's attempt to make up a $45,500 jurisdictional shortfall through attorney's fees alone at this nascent stage of the case is pure speculation. *See Bartnikowski v. NVR, Inc.*, 307 F. App'x 730, 736 n.12 (4th Cir. 2009) (affirming order remanding case and noting that at the nascent stage of litigation, "an estimate of attorneys' fees is pure speculation, and thus . . . cannot be used to augment the amount-in-controversy calculation"); *Lopez v. Gen. Motors, LLC*, No. CV 25-06549-MWF(MAA), 2025 WL 2629545, at *4 (C.D. Cal. Sept. 11, 2025) (noting that it would be "implausible" to assume that attorney's fees would surmount $50,000 at "this early stage of the action"). "[D]istrict courts are well equipped . . . to determine when a fee estimate is too speculative because of the likelihood of a prompt settlement" or otherwise. *Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 795 (9th Cir. 2018). Aramsco asserts that a "conservative estimate" of fees assumes that this Court will award fees of at least 100 hours at a $725 hourly rate. Dkt. No.

ORDER GRANTING MOTION TO REMAND - 8

18 at 17. Spencer responds that "[i]t is unreasonable to assume that Plaintiff's lead attorney alone will bill those full 100 hours" at his hourly rate of $725, and "[i]t is similarly unreasonable to assume this case will require more than 100 hours to litigate based on an estimation used for materially distinct, complex wage actions." Dkt. No. 21 at 10. Spencer also notes that the "time and labor required here is limited given the straightforward nature of RCW 49.58.110 and that Mr. Spencer's counsel is litigating several similar cases, allowing for work product to be reproduced at minimal cost." Dkt. No. 16 at 11 (noting that "work on this simple case can be performed by associates and paralegals who bill at a fraction of senior members"). The Court agrees with Spencer that the issues in this case appear legally and factually straightforward. In addition, there is *substantial* duplication in the work counsel has and will perform in this case and the numerous other cases they are litigating involving the same issues, including other cases brought by Spencer, which should drastically reduce the hours expended. *See, e.g.*, *Spencer v. L'Oreal USA Inc.*, 2:25-cv-01603-LK (W.D. Wash. 2025); *Spencer v. Empire Today LLC*, 2:25-cv-01661-LK (W.D. Wash. 2025). For example, the complaints and motions to remand are substantively identical. *Compare* Dkt. Nos. 1-2, 16, *with Spencer v. L'Oreal USA Inc.*, 2:25-cv-01603-LK, at Dkt. Nos. 1-1, 13. Moreover, Aramsco has not shown that this case is likely to fall into the minority of cases that end in trial rather than a relatively prompt settlement; the settlements it has filed in "similar" cases, Dkt. No. 20 at 5, undermine any such assumption. *See Wright v. BlueLinx Corp.*, No. 2:25-CV-01645-LK, 2025 WL 3771239, at *4 (W.D. Wash. Dec. 31, 2025) (rejecting defendant's assumption "based only on its own *ipse dixit* that this case will be litigated to summary judgment and that this Court will award fees of at least 104 hours at a $725 hourly rate").

In sum, Aramsco's unsupported speculation fails to carry its burden to establish by a preponderance of the evidence that the amount in controversy is satisfied. *See Fritsch*, 899 F.3d at 795 (defendants are required to establish the amount in controversy "with summary-judgment-type

ORDER GRANTING MOTION TO REMAND - 9

evidence," and a court "may reject the defendant's attempts to include future attorneys' fees in the amount in controversy if the defendant fails to satisfy this burden of proof"); *Galvan v. Walt Disney Parks & Resorts U.S., Inc.*, No. CV 17-00323-AB (FFM), 2017 WL 1033968, at *5 (C.D. Cal. Mar. 17, 2017) ("The fact that it is possible this case may proceed past the early stages of litigation and through to trial, and that the Court might later award attorneys' fees in excess of $75,000, does not establish that those events are more likely than not to occur. This speculative estimate of future attorneys' fees does not satisfy Defendant's burden. Moreover, applying the Defendant's logic, *any* case where attorneys' fees may be awarded by statute would satisfy the amount in controversy, even if unsupported by any concrete evidence, merely because litigation is expensive and the fact a case was filed raises the possibility it may proceed to trial.").[4] Because Aramsco has failed to carry its burden, remand is warranted.

Finally, the Court denies Aramsco's request for leave to take jurisdictional discovery regarding the amount in controversy. *See* Dkt. No. 18 at 21. Aramsco contends that it "need only serve a narrow set of interrogatories and requests for admissions to demonstrate that Plaintiff and his counsel seek a recovery of well in excess of $75,000 for his claims in this action" because it doubts that Spencer and his counsel will disclaim damages and fees above the jurisdictional amount. *Id.* Spencer responds that courts have recognized that "making plaintiffs stipulate to the amount in controversy 'serves no effect in determining the amount in controversy at the time of removal.'" Dkt. No. 21 at 11–12 (quoting *LeFaive*, 2018 WL 6716150, at *2).

---

[4] *See also Johnson v. Wells Fargo Home Mortg.*, Civ. No. 12–00144 GAF (SP), 2012 WL 1229880, at *4 (C.D. Cal. Apr. 11, 2012) (finding argument "that Plaintiff's counsel is billing at a rate of $400 per hour, meaning that 'were this case to go to trial Plaintiff's counsel would be required to expend approximately 125 hours in preparation,' for a total of $50,000 in attorney's fees," as "nothing more than speculation"); *Conrad Assocs. v. Hartford Acc. & Indem. Co.*, 994 F. Supp. 1196, 1200 (N.D. Cal. 1998) (finding defendant's contention that attorney fees were likely to total at least $20,000 too speculative where defendant simply asserted that it would take 80 hours at $200 an hour to bring the case to the summary judgment stage, without providing any factual information of how it arrived at this figure).

ORDER GRANTING MOTION TO REMAND - 10

Jurisdictional discovery "should ordinarily be granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Yamashita v. LG Chem., Ltd.*, 62 F.4th 496, 507 (9th Cir. 2023). But here, Aramsco does not specifically identify what it would request in discovery if given the chance. Moreover, "a mere hunch that discovery might yield jurisdictionally relevant facts, or bare allegations in the face of specific denials, are insufficient reasons for a court to grant jurisdictional discovery." *Id.* Aramsco has not shown that discovery will yield anything more than additional speculation about how this litigation *could* progress. Accordingly, Aramsco is not entitled to jurisdictional discovery.

### III.   CONCLUSION

In sum, Aramsco has failed to establish Article III standing or the required amount in controversy. Each failure independently warrants remand. Spencer's motion to remand is therefore GRANTED. Dkt. No. 13. The Court ORDERS that:

1. Pursuant to 28 U.S.C. § 1447(c), all further proceedings in this case are REMANDED to the Superior Court for King County in the State of Washington;

2. The Clerk of the Court shall mail a certified copy of this Order to the Clerk of the Court for the Superior Court for King County, Washington;

3. The Clerk of the Court shall also transmit the record herein to the Clerk of the Court for the Superior Court for King County, Washington; and

4. The Clerk of the Court shall CLOSE this case.

Dated this 11th day of February, 2026.

Lauren King
United States District Judge

ORDER GRANTING MOTION TO REMAND - 11